Hillsborough,
No. 5011.

VERNEY CORPORATION
*(Gera Corporation, plaintiff in interest)*

*v.*

PETERBOROUGH.

Argued June 5, 1962.

Decided September 28, 1962.

Reargued December 5, 1962.

Former Result Affirmed January 31, 1963.

*McLane, Carleton, Graf, Greene & Brown* and *G. Peter Guenther* (*Mr. Stanley M. Brown* and *Mr. Guenther* orally), for the plaintiff.

*Booth, Wadleigh, Langdell, Starr & Peters* (*Mr. William J. Starr, Jr.* orally), for the defendant.

*William Maynard,* Attorney General and *Frederic T. Greenhalge,* Assistant Attorney General (*Mr. Greenhalge* orally), for the State Tax Commission, *amicus curiae.*

WHEELER, J. On April 1, 1955, the plaintiff, Verney Corporation, owned and operated a textile finishing plant in the town of Peterborough engaged in dyeing and finishing cloth which had been woven at other textile mills owned by the plaintiff in Brunswick, Maine and Manchester, New Hampshire. The cloth received by the plaintiff in the unfinished stage was known to the trade as "greige cloth" or "greige goods." Other cloth, received from its Manchester mill, was finished "marquisette" or curtain material. The plaintiff finishes goods only on order.

The plaintiff's taxable property on April 1, 1955, consisted of certain dwelling houses, mills and machinery and stock in trade. The property was assessed for a total valuation of $920,650 at a tax rate of $31.50 a thousand.

The plaintiff ceased its finishing operations in June of 1955 and sold some of its property during the tax year.

The master found that property in Peterborough was assessed at approximately 70 per cent of its market value. The evidence sustains such a finding.

Certain preliminary questions will be first considered. It is contended by the defendant that the plaintiff is not equitably entitled to seek judicial relief from the decree of the Superior Court. This contention is based upon the claim that the plaintiff failed to comply with the Court's order of April 2, 1958, to produce certain papers, books, records and documents necessary to analyze its accounts receivable and its account due from factors, all for the purpose of determining the value from time to time of property located in Peterborough. In answer to this claim, the plaintiff said that it had produced all of the documents in possession of its Peterborough office and was unable to produce other records due to the fact that they had been forwarded to plaintiff's New York office and were not presently available. Whether the plaintiff fully complied with the Court's order for discovery is a question which should have been brought to the attention of the Superior Court which made the original order. In any event, at the conclusion of the evidence before the master, counsel for the plaintiff inquired of defendant's counsel, "Are there any other records of the Verney Corporation that you have been saying you needed that you still want that you say have not been supplied? I ask that question because there has been a lot of colloquy that records have been sought and wanted and they have been here and haven't been used. Anything else you want?" To these questions, defendant's counsel answered, "no."

It is also contended that Gera Corporation, plaintiff in interest, cannot recover a tax levied against the Verney Corporation since there was no evidence introduced showing an assignment of the refund claim from Verney to Gera. The master found, "If the defendant seeks to seriously pursue this issue, the master would recommend that the case be reopened for the purpose of permitting Gera Corporation to introduce evidence of assignment." The plaintiff says that this issue was not raised during the trial and

that it stands ready, if necessary, to show that the tax abatement claim of Verney was in fact assigned to Gera Corporation. We think that these contentions are not presented by the exceptions before us and that the defendant has waived any right to now rely upon the claimed deficiencies.

It is next claimed that the plaintiff's declaration of inventory was insufficient as a matter of law because not signed by "its president or other principal officer." RSA 74:7. It is further contended that the inventory as filed did not contain a full and fair and complete disclosure of the plaintiff's property in accordance with RSA 74:4. The plaintiff admits that it did not include in the inventory work in process, dyes and chemicals and "bill and hold" cloth. These were omitted on advice of counsel because, as will later be discussed, it is the plaintiff's contention that these items are not taxable as stock in trade. The master found that the statements made in the inventory relative to stock in trade were made in good faith and that no intent to mislead the defendant or its assessors existed. In view of the claims made here by the plaintiff with respect to the nontaxability of certain items as stock in trade, we concur with the master's findings that it was filed in good faith and without intent to mislead.

The inventory was signed by Mr. Piggott, plaintiff's general manager of the Peterborough plant. He testified he was authorized to sign the inventory for the year 1955 and had been doing the same since 1942. We think that his signature met the requirements of the statute.

The most important issue presented is whether goods in process of manufacture are taxable as stock in trade. It is contended by the plaintiff that such goods, being neither raw materials nor "manufactures," are not taxable under the statute, RSA 72:15 I, which provides, in part: "for purposes of taxation, raw materials and manufactures of any manufactory . . . shall be deemed stock in trade . . . ."

Predecessor statutes lend little aid in determining legislative intent since the statute has been in substantially its present form since 1825. 9 Laws of N. H. 445, 446, 670. No case in this jurisdiction has been discovered and none has been submitted which aids in deciding this precise question. It is true, as contended by the plaintiff, no tax can be imposed by law "in the absence of a manifest declaration of the intent of the legislature

to impose it." *Sunapee* v. *Lempster,* 65 N. H. 655; *Canaan* v. *District,* 74 N. H. 517, 540.

In *Woodworth* v. *Concord,* 78 N. H. 54, 55, stock in trade is given this definition: "By stock in trade is meant the visible and tangible property with which the trade or business of the owner is carried on, and to which it relates."

As pointed out and conceded by counsel, one man's finished goods are often another man's raw materials, hence something owned and being worked on by the taxpayer but not yet "finished" so far as he is concerned must be as to him "raw materials" and taxable as stock in trade. The master could properly find, as he did, that goods in process have a market value to a prospective purchaser and properly ruled that they are taxable as stock in trade within the meaning of the statute. We do not believe that the Legislature intended any other construction of the statute.

Among other arguments advanced by the plaintiff for excluding goods in process from taxation is that during the transitory period from raw material to finished product goods in process have no sale value except in liquidation at liquidation values as unfinished goods or goods finished at excess costs. The master declined to adopt this theory and ruled that the goods on order and in process were items in a going business having value to a purchaser purchasing not only the unfinished goods but also such other assets of the company as would permit completion of the goods and sale to the customers who contracted therefor and that as such they would have a market place value.

The plaintiff challenges the master's finding that the plaintiff's taxable stock in trade for assessment purposes as of April 1, 1955, was $911,472 since, it is claimed, it was based upon cost to the plaintiff which does not reflect true market value. The stock in trade tax is a tax upon estates assessed upon the average amount of property which an owner employs in his trade or business during the year to be appraised at its full and true value in money, and levied proportionately in the same manner as taxes are levied on real estate. *Bemis &c. Bag Co.* v. *Claremont,* 98 N. H. 446. In determining the true market value of stock in trade and real estate, the same yardstick must be applied as to real estate and is to be determined by competent evidence. "The normal rule of value permits evidence of all relevant factors to be received for the formation of the finding, in analysis and opinion, of the trier of facts. It includes this factor of replace-

ment cost, to be given greater or lesser weight by the trier in the formation of his opinion as he may estimate it. But the statute implies no required use of it as an exclusive measure. On the contrary, consideration is to be given to all pertinent factors having bearing on value, as the statute is held to define value." *Trustees &c. Academy* v. *Exeter*, 92 N. H. 473, 486.

The plaintiff contends that the master's report erroneously adopted a tax value based on value to it as the owner. Goods of the nature here involved, being in process upon order, have no readily ascertainable market value. As in the case of other types of stock in trade, the assessors are dependent to a large extent upon the taxpayer's own records to determine "average value . . . for the year." RSA 72:15 I. In this case the master adopted the taxpayer's figure of cost to it of raw materials and of processing. He was not compelled to find that the goods in process had no value, or to determine what their value might be if processing were stopped and the goods offered for sale in an unfinished state. The figures upon which the master relied represented in this case the value not only to the owner, but also to any purchaser who might choose to process the goods as did the plaintiff. As the master pointed out, "stock in trade is a flowing asset and for that reason the value is determinable 'at the average value thereof for the year.' " To require the selectmen to place a forced sale value upon goods in process and uncompleted would ignore the purpose of the statute and offend the principle that taxation is to be administered in a practical way. *Bemis &c. Bag Co.* v. *Claremont*, 98 N. H. 446, 453.

In arriving at the value of plaintiff's stock in trade for tax purposes, the master considered a worksheet prepared by the plaintiff which was entitled "Estimated Values for Stock in Trade Assessment, 1955 Tax Year," and contained figures for twelve months in 1954 and the first two months in 1955. These averages ranged from $911,000 in round figures to $963,000 in round figures. In arriving at the true value, the master used the smallest of these average valuations. Furthermore, the same exhibit indicates that the "finished value" varies between 48.57 and 58.77 cents a yard for men's wear, and "finished value" of between 30.06 cents per yard and 34.63 cents per yard for curtain fabric. There was other evidence which indicated that the finished values for men's wear was substantially higher. The plaintiff submitted evidence that the Peterborough inventory value for December 31,

1954 was $851,721, which did not include the "bill and hold" cloth, which was estimated at $149,455. We think these estimates were "relevant factors to be received" and to be considered by the master in arriving at the true market value. *Trustees &c. Academy* v. *Exeter, supra*. The master could properly consider that in the ordinary course of events the plaintiff anticipated a profit on these goods. The taxpayer has no cause to complain where the true value arrived at is less than the findable market value.

The plaintiff also contends that the master erred in including in taxable stock in trade certain goods known as "bill and hold" goods. When finished, the cloth is baled, billed to the purchaser and held at plaintiff's warehouse pending shipping instructions. These "bill and hold" goods, the plaintiff contends, are exempt from taxation, since when they are finished and billed to the customer, title to the property passes from the plaintiff. As to "bill and hold" goods, plaintiff overlooks the provisions of RSA 73:3, 4, which provides that taxable property of corporations shall be taxed in the town where it is located and to the owner or person having it in charge. These goods were properly taxed to the plaintiff whether title had passed or not.

In considering whether the plaintiff has been compelled to bear more than its just share of the common burden of taxation, the plaintiff suggests that the selectmen, having learned before the 1955 tax rate was set that the plaintiff's stock in trade was being removed from the town and that its average value would be likely to be substantially reduced, should have given consideration to this factor in assessing plaintiff's stock in trade.

If an individual is engaged in business on April 1, he is assessed not on the amount of stock in trade on hand on that date but upon the average amount employed in business during the year. *Bemis &c. Bag Co.* v. *Claremont*, 98 N. H. 446, 450. The tax value on April 1 is to be determined by competent evidence, and the validity of the tax is not affected by the abandonment of the business during the tax year. *Conn. Valley Lumber Co.* v. *Monroe*, 71 N. H. 473, 477; *Bi-Rite, Inc.* v. *Concord*, 101 N. H. 291. We are of the opinion that the value of the property taxable as stock in trade was properly determined upon the basis of the value of the property which on April 1, 1955, the plaintiff was averaging to carry in its business from year to year. *Conn. Valley Lumber Co.* v. *Monroe, supra*. The plaintiff's exceptions to the master's findings and rulings as to the tax upon the stock in trade are overruled.

The defendant and *amicus curiae* contend that the master erred in finding that the true value of the plaintiff's mill real estate on April 1, 1955 was $104,500, and on machinery and equipment $357,681, since the master arrived at this figure based on sales of real estate and machinery made after the tax was assessed. These sales were made during 1956 to 1958 in three separate parcels, and it was found that the evidence indicates "that this was not a case where the seller rushed in to unload quickly at whatever price he was able to obtain. There was no evidence that it was to the advantage of the plaintiff to obtain a lower price than the market price . . . Endeavors were made to sell out the business as a going business." As to the machinery and equipment, the master found that the plaintiff advertised widely through trade channels in order to find a purchaser, secured the services of a selling agent who specialized in the sales of such machinery, and found that the selling price for all of their machinery and equipment was its true value as of April 1, 1955. Other real estate was sold during 1955-1956, and such sales were found to be "made in good faith; that there was no evidence of material changes in the properties that would effect a change in values between date of sale and April 1, 1955."

The plaintiff does not question the master's valuations of real estate and mills and machinery; and we understand ,that since the other valuations fixed by the master are sustained, the defendant waives its exceptions.

Since a tax upon the total valuation found by the master would exceed the tax paid by the plaintiff, it follows that it has no cause for abatement, and its petition was properly dismissed.

*Exceptions overruled.*

All concurred.

ON REHEARING. After the foregoing opinion was filed, the plaintiff's motion for rehearing was granted.

*McLane, Carleton, Graf, Greene & Brown (Mr. Stanley M. Brown* orally), for the motion.

*Franklin Hollis* (by brief and orally), for Rumford Printing Co. as *amicus curiae,* for the motion.

*Upton, Sanders & Upton* (*Mr. Richard F. Upton* orally), for New Hampshire Manufacturers Ass'n as *amicus curiae*, for the motion.

*Devine, Millimet, McDonough, Stahl & Branch* (*Mr. Joseph A. Millimet* orally), as *amicus curiae*, for the motion.

*Booth, Wadleigh, Langdell, Starr & Peters* and *Charles J. Dunn* (*Mr. William J. Starr, Jr.* and *Mr. Dunn* orally), opposed.

*William Maynard*, Attorney General and *Frederic T. Greenhalge*, Assistant Attorney General (*Mr. Greenhalge* orally), opposed.

WHEELER, J. Certain criticisms of the opinion filed on September 28, 1962 which relate to the form of expression rather than the substance of the holding have been dealt with by modification of the opinion which is otherwise reaffirmed. The chief criticisms of the substance of the views formerly expressed have been directed to the holding that goods in the process of manufacture are taxable, and to the holding sustaining the findings of the master as to the average value of property taxable as stock in trade. In the latter connection the plaintiff argues that competent proof presented by it has been erroneously ignored which established that the average value of its inventory for the tax year April 1, 1955 to April 1, 1956 did not exceed $124,086.05, since substantially all of its inventory was liquidated between July 1 and September 1, 1955.

In the course of the rehearing, the history of the statutory provisions relating to the taxation of stock in trade was exhaustively explored by counsel, and the suggested interpretations of those provisions have been carefully considered by the court. We adhere to our former decision that goods belonging to a manufacturer which are in process of manufacture are taxable to the manufacturer as stock in trade. RSA 72:15 I. See RSA 73:3, 4; 73:3 (supp).

We believe that the plaintiff's argument that the valuation of its inventory could not be found to exceed $124,086.05 is based upon an erroneous assumption that the "average value . . . for the year," at which the statute directs that stock in trade shall be reckoned (RSA 72:15 I), refers to the average value

for the specific year following April 1 of the tax year. Our consideration of the history of the statute persuades us that this is not so. As counsel have pointed out, the statute originally provided that stock in trade should be reckoned "at the average value thereof for *a* year." (Emphasis supplied). 8 Laws of New Hampshire 183 (1812); 10 *Id.*, 157 (1830); 10 *Id.*, 423 (1833). See Laws 1836, *c*. 238, *s*. 1. Raw materials and manufactures were made taxable as "stock in trade" in 1825. 9 Laws of New Hampshire 445. In the consolidation which occurred in R. S. [1842] *c*. 39, *s*. 4, the language relating to stock in trade was changed to "average value . . . for the year," but the pertinent Commissioners' Report indicates that no change in meaning was intended.

This history, together with decided cases and the practice in administration of the tax, leads us to this conclusion: The phrase "average value . . . for the year" is not restricted to the average value either for the year preceding or for the year following April 1 on which the property is liable to be taxed. RSA 73:1. It means rather the average value for any year, for which an average can be taken at the time of the assessment, which is found to be a reasonable indication of the average amount of stock in trade which the taxpayer, on April 1, is carrying in his business year by year. *Conn. Valley Lumber Co.* v. *Monroe*, 71 N. H. 473, 477; *Boston & Maine R. R.* v. *Concord*, 78 N. H. 463, 467.

A manufacturer's stock of raw material and manufactures, like a merchant's stock of goods employed in his trade, is by its very nature a fluctuating asset. It was this characteristic which gave rise to its taxation upon the basis of the value of the stock averaged to be employed in a business from year to year, rather than the value of the stock which chanced to be on hand on April 1. See Annot. 66 A.L.R. 2d 833.

The determination of that average for purposes of assessment, or when an abatement is sought, is a matter for the judgment of the finders of the facts, who in the first instance are the assessors. In reaching that judgment, when the taxpayer asserts that a decline in the average is taking place the assessors may adopt a policy of "wait and see," (RSA 75:1) but for a limited time only. In the nature of things any delay in acting upon a petition to the assessors for abatement must necessarily yield to the practical requirement that the annual tax levy of the district shall be determined and collected. RSA 76:10, 11.

Where the value of stock on hand for a particular date falls below the prior average for a year, this may or may not be significant in the assessment of the tax, according to whether it represents merely a temporary condition subject to offset by later increases, or on the other hand a condition which has persisted over a sufficient part of a year to indicate a true reduction in annual average. The category into which such a decline in valuation will fall cannot well be determined in advance.

Taxes are assessed as of April 1 and upon a practical basis. A reduction in stock which occurs after an assessment made upon the basis of a yearly average carried in the business as of April 1 will not necessarily require reassessment or abatement of a tax already properly determined without reference to the later reduction.

We are of the opinion that the master did not err in fixing the valuation of the plaintiff's inventory upon the basis of the average amount carried in its business for a year which ended December 31, 1954. The figures embodied in the requests which the plaintiff contends should have been granted were based upon averages for the year April 1, 1955 to April 1, 1956 and included classifications each of which was carried into the average at zero for periods ranging from six to nine of the twelve months averaged. Since the statute did not require use of the average for the year following April 1, 1955, the master could properly refuse to adopt the figures of the plaintiff's requests.

*Former result affirmed.*

All concurred.

January 31, 1963.